UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL BRAMWELL,

                        Plaintiff,

-against-

LIEUTENANT MURRAY, COUNSELOR WINGATE, CASE MANAGER DIANE FORD, CORRECTIONAL OFFICER DANIEL M. HOPE, LIEUTENANT PATRICK J. HICKEY, LIEUTENANT EDWARD MULRONEY, ASSISTANT WARDEN MARTINEZ, WARDEN GREGORY PARKS, JOHN DOE 1, JOHN DOE 2, SPECIAL INVESTIGATIVE AGENT GLENN CARRINO, CAPTAIN ALLEN BEARD and THE UNITED STATES OF AMERICA,

                        Defendants.

---

05 Civ. 7504 (BSJ) (HBP)

ECF CASE
(Jury Trial Demanded)

**THIRD AMENDED COMPLAINT**

      Plaintiff Michael Bramwell, by his attorneys, alleges upon personal knowledge with respect to his own actions and upon information and belief with respect to all other matters:

### Nature of the Action

      1.    This action arises out of the vicious attack on inmate Michael Bramwell ("Plaintiff") by a correctional officer while Plaintiff was housed at the Metropolitan Correctional Center in New York, New York ("MCC") and the subsequent deliberate indifference by MCC officials to Plaintiff's serious need for medical attention as a result of the attack.

      2.    Plaintiff seeks relief for violations of the rights guaranteed him by the Fifth Amendment to the Constitution of the United States and for intentional and negligent torts.

**Jurisdiction and Venue**

3. This Court has subject matter jurisdiction over Plaintiff's constitutional claims pursuant to 28 U.S.C. § 1331 as those claims are brought pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971) and arise under federal law.

4. This Court has subject matter over Plaintiff's common law claims pursuant to 28 U.S.C. § 1346(b) as those claims arise out of the negligent or wrongful acts of employees of the United States government acting within the scope of their office or employment.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) as it is the district in which a substantial part of the events or omissions giving rise to the claims occurred.

**Parties**

6. Plaintiff is an inmate in federal custody and has been incarcerated at facilities maintained and controlled by the Federal Bureau of Prisons. At the time of the events giving rise to this complaint, Plaintiff was detained, pre-trial, at the Metropolitan Correctional Center located in New York, New York.

7. Defendant Lieutenant Murray was, at the time of the events giving rise to this complaint, a senior correctional officer at Metropolitan Correctional Center, located in New York, New York, and was responsible for the care and custody of the inmates under his supervision.

8. Defendant Daniel M. Hope was, at the time of the events giving rise to this complaint, a correctional officer at Metropolitan Correctional Center, located in New York, New York, and was responsible for the care and custody of the inmates under his supervision.

9. Defendant Patrick J. Hickey was, at the time of the events giving rise to this complaint, a senior correctional officer at Metropolitan Correctional Center, located in New York, New York, and was responsible for the care and custody of the inmates under his supervision.

10. Defendant Edward Mulroney was, at the time of the events giving rise to this complaint, a senior correctional officer at Metropolitan Correctional Center, located in New York, New York, and was responsible for the care and custody of the inmates under his supervision.

11. Defendant John Doe 1 was, at the time of the events giving rise to this complaint, a correctional officer at Metropolitan Correctional Center, located in New York, New York, and was responsible for the care and custody of the inmates under his supervision.

12. Defendant John Doe 2 was, at the time of the events giving rise to this complaint, a correctional officer at Metropolitan Correctional Center, located in New York, New York, and was responsible for the care and custody of the inmates under his supervision.

13. Defendant Glenn Carrino was, at the time of the events giving rise to this complaint, a special investigative agent at Metropolitan Correctional Center, located in New York, New York, and was responsible for the care and custody of the inmates under his supervision.

14. Defendant Allen Beard was, at the time of the events giving rise to this complaint, a captain at Metropolitan Correctional Center, located in New York, New York, and was responsible for the care and custody of the inmates under his supervision.

15. Defendant Wingate was, at the time of the events giving rise to this complaint, a counselor at Metropolitan Correctional Center, located in New York, New York,

assigned to Plaintiff and was responsible for the care and custody of the inmates under her supervision.

16.     Defendant Diane Ford was, at the time of the events giving rise to this complaint, a case manager at Metropolitan Correctional Center, located in New York, New York, assigned to Plaintiff and was responsible for the care and custody of the inmates under her supervision.

17.     Defendant Martinez was, at the time of the events giving rise to this complaint, the Assistant Warden of Metropolitan Correctional Center, located in New York, New York, and was responsible for the care and custody of the inmates at Metropolitan Correctional Center.

18.     Defendant Gregory Parks was at the time of the events giving rise to this complaint the Warden of Metropolitan Correctional Center, located in New York, New York, and was responsible for the care and custody of the inmates at Metropolitan Correctional Center.

### Facts

The Attack

19.     On or about August 24, 2003, Plaintiff was informed by a fellow inmate at MCC that an MCC correctional officer had referred to Plaintiff as a "chi chi man", a derogatory term for homosexual.

20.     On or about August 26, 2003, Plaintiff reported the incident to Defendant Wingate, his counselor, and sought an administrative form, or "BP-9", in order to grieve the incident to the appropriate prison officials. Defendant Wingate gave Plaintiff a BP-9 form, but told Plaintiff that he should raise the incident with a lieutenant.

21.     On or about August 27, 2003, Defendant Murray and Defendant John Doe 1 were in the officer's station adjacent to the kitchen area where Plaintiff and several other

inmates were gathered. Plaintiff observed Defendant Murray, and waited outside the officer's station in order to raise his grievance when Defendant Murray exited. As Defendant Murray and Defendant John Doe 1 exited the officer's station, Plaintiff approached him and said "Lieutenant". Defendant Murray responded "No".

22. At that time, Plaintiff attempted to explain to Defendant Murray that he wished to report a grievance, as he was instructed to do by Defendant Wingate. Defendant Murray then shouted at Plaintiff, "When I say no, I mean no", and threatened to place Plaintiff in Nine South, an administrative segregation unit at MCC.

23. Plaintiff attempted to explain to Defendant Murray that Defendant Wingate had advised him to report the grievance to a lieutenant. When Plaintiff made this attempt to speak to Defendant Murray, Defendant Murray grabbed Plaintiff and handcuffed his arms behind his back.

24. While Plaintiff was handcuffed, Defendant Murray drove him headlong into a concrete wall approximately six feet away.

25. Immediately after throwing Plaintiff into the wall for the first time, Defendant Murray took hold of Plaintiff, who remained handcuffed, and threw him again into the concrete wall.

26. Defendant Murray then grabbed Plaintiff's wrists, which remained handcuffed behind Plaintiff's back, forced them up towards Plaintiff's shoulders, and shouted, "If you fucking move, I am going to break your fucking hand and throw you to the floor".

27. Defendant John Doe 1 observed the entire August 27, 2003, incident described in paragraphs 20 through 25 herein, observed the violence of Defendant Murray's attack on Plaintiff, observed the pain that attack was causing Plaintiff, and reasonably could have

prevented the attack, either physically or by speaking with Defendant Murray, without compromising his safety or the safety of others around him. Nevertheless, Defendant John Doe 1 did nothing to prevent or stop the attack.

28. Immediately after his initial attack on Plaintiff, Defendant Murray walked Plaintiff, who remained handcuffed, out of the kitchen area, and escorted him to an elevator. While in the elevator, Defendant Murray again threw Plaintiff against the wall, slammed his fist into Plaintiff's back, placed his knee against Plaintiff's spine and repeated, "When I say no, I mean no".

29. When the elevator arrived at Nine South, Defendant Murray gave Plaintiff over to the custody of Defendant Hope, who escorted Plaintiff to a cell, removed Plaintiff's handcuffs, and locked the cell door.

30. Defendant Murray's attack fractured Plaintiff's shoulder and caused significant injuries to other parts of Plaintiff's body, including his neck, back, arms, wrists, and hands.

Failure to Treat Plaintiff's Injury

31. When Plaintiff was brought to the administrative unit at Nine South, it was apparent that he was seriously injured, in severe pain, and in need of immediate medical attention. Nevertheless, Defendant Hope, who escorted Plaintiff to a cell on Nine South, sought no medical attention for Plaintiff.

32. Approximately thirty minutes after being brought to Nine South, Plaintiff was escorted by correctional officer Defendant John Doe 2 back to Plaintiff's assigned cell in the Seven North unit. When Plaintiff arrived at Seven North, he informed the officer on duty, Defendant John Doe 1 (who had previously witnessed—but did not stop—Defendant Murray's attack on Plaintiff), of his pain and injuries, and asked to receive immediate medical attention.

33. Approximately one hour later, Plaintiff repeated his request for immediate medical attention to Defendant John Doe 1, and Defendant John Doe 1 informed Plaintiff that he would receive such medical attention later that night. Plaintiff received no medical attention on August 27, 2003.

34. On August 28, 2003, at approximately 10:00 in the morning, Plaintiff informed Defendant Wingate and Defendant Ford of Defendant Murray's attack and Plaintiff's injuries and again asked for immediate medical attention. At this time, it was still apparent that Plaintiff was seriously injured, in severe pain, and in need of immediate medical attention.

35. Shortly after speaking with Defendant Wingate and Defendant Ford, Plaintiff was brought to a meeting with Defendant Wingate, Defendant Ford, Defendant Hickey, Defendant Carrino and Defendant Beard. Plaintiff repeated his account of the attack and informed Defendant Wingate, Defendant Ford, Defendant Hickey, Defendant Carrino and Defendant Beard of his injuries and the serious pain he was in, and Plaintiff repeated his request for immediate medical attention. Plaintiff was then returned to his cell on Seven North.

36. Sometime after being returned to his cell on August 28, 2003, Plaintiff informed Defendant Mulroney, the officer on duty in the unit, that Plaintiff was suffering from serious injuries, that he was in significant pain and that he had not received medical treatment. Defendant Mulroney observed Plaintiff's injuries and the significant pain Plaintiff was suffering. Plaintiff requested immediate medical attention. Defendant Mulroney assured Plaintiff he would receive medical attention that day. Plaintiff received no medical attention on August 28, 2003.

37. Throughout the day on August 29, 2003, Plaintiff informed every officer on duty in his unit that he had serious injuries, that he was in significant pain, and that he had not

received medical treatment. Plaintiff also requested immediate medical attention. Plaintiff received no medical attention on August 29, 2003.

38.  Throughout the day on August 30, 2003, Plaintiff informed every officer on duty in his unit that he had serious injuries, that he was in significant pain, and that he had not received medical treatment. Plaintiff also requested immediate medical attention. Plaintiff received no medical attention on August 30, 2003.

39.  Throughout the day on August 31, 2003, Plaintiff informed every officer on duty in his unit that he had serious injuries, that he was in significant pain, and that he had not received medical treatment. Plaintiff also requested immediate medical attention. Plaintiff received no medical attention on August 31, 2003.

40.  Throughout the day on September 1, 2003, Plaintiff informed every officer on duty in his unit that he had serious injuries, that he was in significant pain, and that he had not received medical treatment. Plaintiff also requested immediate medical attention. Plaintiff received no medical attention on September 1, 2003.

41.  From August 28, 2003 through September 1, 2003, Plaintiff submitted nine written requests for medical attention, some of which were submitted to and received by Defendant Parks and Defendant Martinez. Only three of those nine requests were forwarded to MCC medical staff, and all of those requests were ignored.

42.  From August 28, 2003 through September 1, 2003, it was apparent that Plaintiff was seriously injured, in severe pain, and in need of immediate medical attention. Nevertheless, none of the officers who had contact with Plaintiff sought medical attention on his behalf.

43.   On September 2, 2003, after being allowed to remain in excruciating pain for over one hundred hours, Plaintiff was finally taken to the prison's medical department.

Harm to Plaintiff

44.   Defendant Murray's attack on Plaintiff, as described herein, fractured Plaintiff's shoulder and caused other significant injury to Plaintiff, including to Plaintiff's neck, back, arms, wrists and hands.

45.   Defendants failure to provide Plaintiff with medical treatment, as described herein, significantly exacerbated Plaintiff's injuries and prolonged his pain.

46.   As a result of the attack on Plaintiff and the failure of the Defendants to provide him medical treatment, as described herein, Plaintiff has suffered, and continues to suffer, chronic and substantial physical pain and physical impairment, including loss of movement and severe arthritis, which prevents him from engaging in daily activities, including work-related activities.

47.   As a result of the attack on Plaintiff and the failure of Defendants to provide him medical treatment, as described herein, Plaintiff currently needs, and will continue to need, extensive medical care.

48.   As a result of the attack on Plaintiff and the failure of Defendants to provide him treatment, as described herein, Plaintiff has suffered serious emotional and mental harm.

Involvement of Martinez and Parks

49.   Prior to attacking Plaintiff, Defendant Murray had, on several occasions, verbally abused and physically beaten other inmates. Defendant Martinez and Defendant Parks were aware of Murray's prior actions and of the danger that he posed to the inmate population in general and to Plaintiff specifically.

50. Prior to the attack on Plaintiff, similar attacks by corrections officer on inmates had taken place at MCC. Defendant Martinez and Defendant Parks were aware of these attacks but had not taken steps to train the officers, including Defendant Murray, in a manner that would have prevented Defendant Murray's attack of Plaintiff.

51. Defendant Martinez and Defendant Parks were aware that Murray was likely to use force against inmates and that, because of his past history and lack of adequate training, he was likely to use excessive and unjustifiable force.

52. Nevertheless, Defendant Martinez and Defendant Parks allowed Defendant Murray to occupy a position that would, and did, lead him to use excessive and unjustifiable force against inmates, and against Plaintiff specifically.

Exhaustion of Administrative Remedies

*Prison Litigation Reform Act Exhaustion*

53. Plaintiff has exhausted all administrative remedies required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e.

54. On or about September 7, 2003, after attempting informal resolution of his complaint, Plaintiff filed an administrative complaint with Defendant Parks, the warden of MCC, which was denied on or about September 16, 2003.

55. On or about September 27, 2003, Plaintiff filed an appeal of Defendant Parks' decision to the Regional Director of the Federal Bureau of Prisons, which was denied on or about October 31, 2003.

56. On or about November 11, 2003, Plaintiff filed an appeal of the Regional Director's decision to the Central Office of the Federal Bureau of Prisons, which was denied on or about February 7, 2004.

*Federal Tort Claims Act Exhaustion*

57. Plaintiff has exhausted all administrative remedies required by the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq.

58. On or about July 13, 2005, Plaintiff filed a tort claim with the Northeast Regional Office of the Federal Bureau of Prisons, which was denied on or about December 21, 2005.

### Count One
### (Against Defendant Murray for Violation of Plaintiff's Constitutional Rights — Excessive Force)

59. Paragraphs 1 through 58 above are repeated and realleged as if set forth herein.

60. Defendant Murray, perceiving no reasonable threat from Plaintiff, attacked Plaintiff wantonly, with a malicious and sadistic state of mind, and with intent to cause harm.

61. Defendant Murray's attack constituted excessive force resulting in the unnecessary and wanton infliction of pain on Plaintiff, depriving Plaintiff of his right to due process guaranteed by the Fifth Amendment to the United States Constitution.

62. Defendant Murray was at all times acting under color of federal law.

63. Defendant Murray's attack was motivated by evil motive or intent, or involved reckless or callous indifference to Plaintiff's federally protected rights.

64. As a direct result of Defendant Murray's attack, Plaintiff suffered significant injury, including serious physical harm, excruciating pain and emotional distress, entitling Plaintiff to damages in an amount to be determined at trial. In addition, Plaintiff is entitled to punitive damages.

## Count Two
### (Against Defendant John Doe 1 for Violation of Plaintiff's Constitutional Rights — Excessive Force)

65. Paragraphs 1 through 64 above are repeated and realleged as if set forth herein.

66. Defendant Murray, perceiving no reasonable threat from Plaintiff, attacked Plaintiff wantonly, with a malicious and sadistic state of mind, and with intent to cause harm.

67. Defendant Murray's attack constituted excessive force resulting in the unnecessary and wanton infliction of pain on Plaintiff, depriving Plaintiff of his right to due process guaranteed by the Fifth Amendment to the United States Constitution.

68. Defendant John Doe 1 observed the excessive force being used by Defendant Murray, had a realistic opportunity to prevent it, and yet failed to intervene to prevent or stop the attack on Plaintiff, thereby depriving Plaintiff of his right to due process guaranteed by the Fifth Amendment to the United States Constitution.

69. Defendant John Doe 1 was at all times acting under color of federal law.

70. Defendant John Doe 1's failure to intervene was motivated by evil motive or intent, or involved reckless or callous indifference to Plaintiff's federally protected rights.

71. As a direct result of Defendant John Doe 1's failure to intervene, Plaintiff suffered significant injury, including serious physical harm, excruciating pain and emotional distress, entitling Plaintiff to damages in an amount to be determined at trial. In addition, Plaintiff is entitled to punitive damages.

## Count Three
### (Against Defendant Martinez and Defendant Parks for Violation of Plaintiff's Constitutional Rights — Deliberate Indifference)

72. Paragraphs 1 through 71 above are repeated and realleged as if set forth herein.

73. Defendant Martinez and Defendant Parks knew to a moral certainty that Defendant Murray and Defendant John Doe 1 would confront a situation in which they would need to decide whether to use force and how much force to use.

74. Proper training under the supervision of Defendant Martinez and Defendant Parks would have reduced the risk that Defendant Murray or John Doe 1 would use excessive and unjustified force.

75. Defendant Martinez and Defendant Parks failed to provide adequate training to Defendant Murray, Defendant John Doe 1 and other correctional officers in the proper use of force.

76. Defendant Martinez and Defendant Parks were at all times acting under color of federal law.

77. The improper training supervised by Defendant Martinez and Defendant Parks has led to the deprivation of inmates' rights, including the rights of Plaintiff, to due process guaranteed by the Fifth Amendment to the United States Constitution.

78. The conduct of Defendant Martinez and Defendant Parks in failing to provide adequate training and supervision to Defendant Murray, Defendant John Doe 1 and other correctional officers was done with deliberate indifference, gross negligence and reckless disregard for an excessive risk to inmate health and safety, was done without lawful justification and was designed to and did deprive Plaintiff of his rights guaranteed by the Fifth Amendment to the United States Constitution.

79. The conduct of Defendant Martinez and Defendant Parks in failing to provide adequate training and supervision to Defendant Murray, Defendant John Doe 1 and other

correctional officers was motivated by evil motive or intent, or involved reckless or callous indifference to Plaintiff's federally protected rights.

80. As a direct result of Defendant Martinez and Defendant Parks' deliberate indifference to Defendant Murray's and Defendant John Doe 1's lack of proper training, Plaintiff suffered significant injury, including serious physical harm, excruciating pain and emotional distress. In addition, Plaintiff is entitled to punitive damages.

### Count Four
### (Against Defendant Murray, Defendant Hope, Defendant Wingate, Defendant Ford Defendant Hickey, Defendant Mulroney, Defendant John Doe 1, Defendant John Doe 2, Defendant Carrino and Defendant Beard for Violation of Plaintiff's Constitutional Rights — Deliberate Indifference)

81. Paragraphs 1 through 80 above are repeated and realleged as if set forth herein.

82. As a result of Defendant Murray's attack, Plaintiff suffered objectively serious injuries to his shoulder, neck, back, arms and hands that required immediate medical attention to avoid degeneration and extreme pain.

83. Defendant Murray, Defendant Hope, Defendant Wingate, Defendant Ford Defendant Hickey, Defendant Mulroney, Defendant John Doe 1, Defendant John Doe 2, Defendant Carrino and Defendant Beard were all aware of the severity of Plaintiff's injuries, that Plaintiff suffered from a condition of urgency that, if untreated, would lead to degeneration and extreme pain, that Plaintiff was in serious need of immediate medical attention and that he was not receiving such attention.

84. Defendant Murray, Defendant Hope, Defendant Wingate, Defendant Ford, Defendant Hickey, Defendant Mulroney, Defendant John Doe 1, Defendant John Doe 2, Defendant Carrino and Defendant Beard disregarded the excessive risk to Plaintiff's health and safety by not seeking any medical attention for Plaintiff.

85. The acts and omissions of Defendant Murray, Defendant Hope, Defendant Wingate, Defendant Ford, Defendant Hickey, Defendant Mulroney, Defendant John Doe 1, Defendant John Doe 2, Defendant Carrino and Defendant Beard in denying Plaintiff adequate medical care were undertaken with deliberate indifference, gross negligence and reckless disregard for an excessive risk to inmate health and safety, were done without lawful justification and were designed to and did deprive Plaintiff of his rights guaranteed by the Fifth Amendment to the United States Constitution.

86. The acts and omissions of Defendant Murray, Defendant Hope, Defendant Wingate, Defendant Ford, Defendant Hickey, Defendant Mulroney, Defendant John Doe 1, Defendant John Doe 2, Defendant Carrino and Defendant Beard in denying Plaintiff adequate medical care were under color of federal law.

87. The acts and omissions of Defendant Murray, Defendant Hope, Defendant Wingate, Defendant Ford, Defendant Hickey, Defendant Mulroney, Defendant John Doe 1, Defendant John Doe 2, Defendant Carrino and Defendant Beard in denying Plaintiff adequate medical care were motivated by evil motive or intent, or involved reckless or callous indifference to Plaintiff's federally protected rights.

88. As a direct result of the deliberate indifference of Defendant Murray, Defendant Hope, Defendant Wingate, Defendant Ford, Defendant Hickey, Defendant Mulroney, Defendant John Doe 1, Defendant John Doe 2, Defendant Carrino and Defendant Beard to Plaintiff's need for medical attention, Plaintiff suffered significant injury, including serious physical harm, excruciating pain and emotional distress, entitling Plaintiff to damages in an amount to be determined at trial. In addition, Plaintiff is entitled to punitive damages.

## Count Five
### (Against Defendant United States of America for Tortious Conduct of Defendant Murray — Assault and Battery)

89. Paragraphs 1 through 88 above are repeated and realleged as if set forth herein.

90. Defendant Murray is an employee of the United States Government.

91. Defendant Murray's intentional, unjustified actions on or about August 27, 2003, as described herein, placed Plaintiff in apprehension of imminent harmful or offensive contact.

92. Defendant Murray's intentional, unjustified actions on or about August 27, 2003, as described herein, resulted in harmful or offensive bodily contact with Plaintiff.

93. Defendant Murray's intentional, unjustified actions on or about August 27, 2003, as described herein, took place while he was acting within the scope of his office or employment.

94. As a direct result of Defendant Murray's intentional, unjustified actions, Plaintiff suffered significant injury, including serious physical harm, excruciating pain and emotional distress, entitling Plaintiff to damages in an amount to be determined at trial.

## Count Six
### (Against Defendant United States of America for Tortious Conduct of Defendant John Doe 1 — Negligence)

95. Paragraphs 1 through 94 above are repeated and realleged as if set forth herein.

96. Defendant John Doe 1 is an employee of the United States Government.

97. By virtue of his position as a correctional officer, Defendant John Doe 1 owed Plaintiff a duty of care.

98. Defendant John Doe 1's failure to prevent Defendant Murray's attack on Plaintiff breached the duty of care that Defendant John Doe 1 owed the Plaintiff.

99. Defendant John Doe 1's failure to prevent Defendant Murray's attack on Plaintiff took place while Defendant John Doe 1 was acting within the scope of his office or employment.

100. Defendant John Doe 1's failure to prevent Defendant Murray's attack on Plaintiff was not based on any policy considerations.

101. As a direct result of Defendant John Doe 1's inaction, Plaintiff suffered significant injury, including serious physical harm, excruciating pain and emotional distress, entitling Plaintiff to damages in an amount to be determined at trial.

### Count Seven
**(Against Defendant United States of America for Tortious Conduct of Defendant Martinez and Defendant Parks — Negligence)**

102. Paragraphs 1 through 101 above are repeated and realleged as if set forth herein.

103. Defendant Martinez and Defendant Parks are employees of the United States Government.

104. By virtue of his position as Assistant Warden, Defendant Martinez owed Plaintiff a duty of care.

105. By virtue of his position as Warden, Defendant Parks owed Plaintiff a duty of care.

106. Defendant Martinez's and Defendant Parks' failure to provide adequate training and supervision of Defendant Murray and Defendant John Doe 1 and Defendant Martinez's and Defendant Parks' continued retention of Defendant Murray and Defendant John Doe 1 breached the duty of care owed by Defendant Martinez and Defendant Parks to Plaintiff.

107. Defendant Martinez's and Defendant Parks' failure to provide adequate training and supervision of Defendant Murray and Defendant John Doe 1 and Defendant Martinez's and Defendant Parks' continued retention of Defendant Murray and Defendant John Doe 1 took place while Defendant Martinez and Defendant Parks were acting within the scope of their office or employment.

108. Defendant Martinez's and Defendant Parks' failure to provide adequate training and supervision of Defendant Murray and Defendant John Doe 1 and Defendant Martinez's and Defendant Parks' continued retention of Defendant Murray and Defendant John Doe 1 were not based on any policy considerations.

109. As a direct result of Defendant Martinez's and Defendant Parks' acts and omissions, Plaintiff suffered significant injury, including serious physical harm, excruciating pain and emotional distress, entitling Plaintiff to damages in an amount to be determined at trial.

### Count Eight
### (Against Defendant United States of America for Tortious Conduct of All Individual Defendants — Negligence)

110. Paragraphs 1 through 109 above are repeated and realleged as if set forth herein.

111. Defendant Murray, Defendant Hope, Defendant Wingate, Defendant Ford, Defendant Hickey, Defendant Martinez, Defendant Parks, Defendant Mulroney, Defendant John Doe 1, Defendant John Doe 2, Defendant Carrino and Defendant Beard (the "Individual Defendants") are employed by the United States Government.

112. By virtue of their positions as correctional officers, the Individual Defendants owed Plaintiff a duty of care.

113. The Individual Defendants' failure to seek immediate medical attention for Plaintiff's serious injuries breached the duty of care owed by those defendants to Plaintiff.

114. The Individual Defendants' failure to seek immediate medical attention for Plaintiff's serious injuries took place while those defendants were acting within the scope of their office or employment.

115. The Individual Defendants' failure to seek immediate medical attention for Plaintiff's serious injuries was not based on any policy considerations.

116. As a direct result of the Individual Defendants' inaction, Plaintiff suffered significant injury, including serious physical harm, excruciating pain and emotional distress, entitling Plaintiff to damages in an amount to be determined at trial.

### Prayer for Relief

WHEREFORE, Plaintiff prays that this Court enter judgment on his complaint in his favor and against the Defendants:

  a. Awarding compensatory damages in an amount to be determined at trial;

  b. Awarding punitive damages in an amount to be determined at trial;

  c. Awarding pre- and post-judgment interest;

  d. Awarding costs, expenses and reasonable attorneys' fees; and

  e. Ordering such other relief as this Court deems just and proper.

## Jury Demand

The Plaintiff demands a trial by jury on all issues so triable.

September 22, 2006

                                 CRAVATH, SWAINE & MOORE LLP

                                 by _____
                                      Matthew L. Kutcher (MK-8332)
                                      Samuel Bryant Davidoff (SD-9793)

                                  Worldwide Plaza
                                    825 Eighth Avenue
                                      New York, NY 10019
                                        (212) 474-1000

                                *Attorneys for Plaintiff*